[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF OPINION RE: BUSINESS VALUATION
The marriage of the parties was dissolved in this court, Dranginis, J., on January 8, 1998 by stipulation. The parties reserved for hearing the issue of valuation of the common stock of the family business. A hearing was held thereon and briefs filed. The plaintiff produced expert evidence from Alec R. Bobrow, of Bobrow Company, Certified Public Accountants. The defendant produced evidence from Richard A. Reynolds, of Reynolds, Pearson Company, also Certified Public Accountants. The parties also testified.
The defendant, since the decree of dissolution, owns all of the common and preferred stock of Mohawk Manufacturing Company, Inc., of Middletown, Connecticut. The company had been founded by the plaintiff-wife's father, and is a manufacturer of metal parts and machine accessories. She testified that her parents had made a gift of the company stock to their two daughters and their daughters' husbands. The two sisters held the preferred stock in the company, but the company was run by the sons-in-law after their father-in-law's retirement. The plaintiff testified that in 1990 or 1992, when her sister divorced, the parties purchased their fifty (50%) percent interest in the common and preferred stock for One Million, Five Hundred Thousand ($1,500,000.00) Dollars. They had offered somewhat less value, which was rejected, and the defendant, plaintiff claimed, indicated that they should pay their price, because . . . "Mohawk was the goose that laid the golden egg . . ." and would be worth the investment.
The defendant testified that he paid a premium for control of the business, and that he could not recall if a marketability discount was applied to the then valuation of the business. The parties agreed that the value paid to her sister and brother-in-law for their interest exceeded the value of the business. Part of the consideration for that purchase was a covenant not to compete. The defendant testified that he had no intention to sell the business, insofar as it had always produced a wonderful living for the family. He further testified that his whole life had been spent with the business, and that he CT Page 13984 anticipated working there for at least five more years, when he considered retiring at age 55. On redirect, he testified that he would not sell the business at any price.
The defendant did testify that a twenty-five (25%) percent marketability discount was applied to the valuation of the business in 1982, when the company was purchased from his in-laws. He agreed on cross-examination that the parties and her sister and brother-in-law only paid Five Hundred ($500.00) Dollars for the business, and that the balance was gifted to them for tax purposes. The goal of his father-in-law was always to reduce taxes, and the reduction in valuation by the use of the marketability discount also facilitated that goal.
Both experts valued the business similarly. The plaintiff's expert, Mr. Bobrow, came to an opinion of value of One Million, Four Hundred Fifteen Thousand ($1,415,000.00) Dollars, and the defendant's expert, Mr. Reynolds, at One Million, Three Hundred Ninety Thousand ($1,390,000.00) Dollars. The value of the common shares would be arrived at by reducing that valuation by Five Hundred, Thirty-nine Thousand ($539,000.00) Dollars, the stipulated value of the preferred shares.
The gravamen of the claim was the use by defendant's expert of a thirty-five (35%) percent marketability discount. The plaintiff's expert declined to use a marketability discount because the defendant had articulated his strong position against a sale of the business, and because of the assumption of continuing profitability. The court found his assumption to be correct based upon the analysis of both experts and the testimony was clear that defendant had no intention to sell the business.
The defendant's expert claimed that it was the exception rather than the rule not to use a marketability discount in a closely held business such as Mohawk Manufacturing. The fact that this exercise is for the purpose of fixing a value for payment now of the plaintiff wife's interest in the business, and the potential use to her of those funds over time, and the loss of those funds over time to the business is also of consequence in the equation. It is clear from the testimony that if a fair market sale takes place, the entire interest in the business would be sold. There is no issue of minority discount, because the stock is owned one hundred (100%) percent by the defendant. The brief of the plaintiff and the defendant includes a number of cases of minority discount, because of the frequency of combining CT Page 13985 or confusing minority discount with marketability discount.
The plaintiff claims that her expert's application of a twenty-five (25%) percent capitalization rate takes into consideration the nature of Mohawk as a closely-held company, and that a marketability discount is inappropriate. The claim is that the company is profitable with no prospect of loss, and that the defendant's pronouncement that he will not sell, and hopes that one of their children will assume control of the business, militates against the application of a marketability discount. The plaintiff's expert testified that there would be no loss of income during a period of marketing, should he elect a different course than that testified to.
The plaintiff and defendant acknowledge the fact-laden case-specific nature of this inquiry, and the cases cited affirm that acknowledgment. The plaintiff claims that when a marketability discount is applied to a one hundred (100%) percent interest valuation, there is customarily a fact articulated which inhibits marketability in addition to the closely-held nature of ownership. The defendant claims that the weight of the case law implies that a marketability discount should be applied, and that the percentage value be as described by his expert, because he was more credible. The experts agreed on the ultimate value, and the arguments by plaintiff's expert against the application of a marketability discount appear in the literature and cases. The defendant's expert offered some rationale for his selection of a thirty-five (35%) percent marketability discount, but the court found other facts to be more compelling. While Mr. Reynolds pointed to a negative business climate, and a "thin" management structure, with stagnant revenues, this court finds that the opinion as to the viability of the cash generation to be strong, and the fact that the family historically gleaned a handsome lifestyle from this business to be more credible. The negatives used by Mr. Reynolds simply do not comport with the observations from the financial statements of the parties and their testimony about their dedication as a family to this going concern. The fact that the defendant takes the position that the company may not be technologically new belies his testimony that he envisions having his children run the company in the future.
The case law, and literature are helpful to the court concerning what is not in the case. There clearly is no minority discount. In the matter of the Marriage of Tofte,134 Ore.App. 449, 895 P.2d 1487 (1995). There is no control premium, because CT Page 13986 that was understood as achieved from the earlier purchase for $1.5 million. Schorer v. Schorer, 501 N.W.2d 916 (Wis. 1993) where 20% marketability discount offset by like control premium. There is no discount for restrictions on stock sales. It is contemplated that this would be a sale of the entire interest in the company to an arm's length buyer, or a transfer to one or both of the children of the parties. There are no restrictions on the sale of the stock post-judgment. There is not claimed a key-person discount, as in Nelson v. Nelson, 411 N.W.2d 868
(Minn.Ct.App. 1987). This is a manufacturing operation which would not cease if the defendant left the business. He is not the sole generating professional in the business, and other than his experience his has no distinct qualities or expertise which no other owner could have. Business contacts could be maintained without his participation in the business.
The lack of a ready market is the only reason which is apparent for the imposition of a marketability discount. The fact that there is a controlling position in a closely-held corporation does not obviate the difficulty in disposing of stock for which there is no ready market. Estate of Ford v.Commissioner, 66 T.C.M. (CCH) 1507 (1993). The court in that case upheld a ten (10%) percent discount for marketability of the 92.41 percent interest in a closely held corporation.
This court finds that the rational of approving a marketability discount for this closely held corporation is appropriate under the facts of this case. However, in comparing the cases cited, and especially Morrissey v. Morrissey,1991 WL 13239 (Conn.Super.) Harrigan, J., July 10, 1991, the court finds that a thirty-five (35%) percent discount is excessive. See Hoak,supra. The court has the power to accept the rationale of one expert, but to decline to follow his opinion with respect to the value of the discount. The defendant's expert's analysis of the corporation does not square with the ability of the corporation to support this family. Furthermore, the use of the capitalization method to value the business and the use of a reasonable marketability discount was sanctioned in a non-family case, RS Hems, Inc. v. Aloi Electric Service, Inc., et al.,11 CONN. L. RPTR. 289, 1994 Conn. Super. LEXUS 895, Corradino, J.
The court has assessed the materials provided, and finds that the imposition of a discount on the high end of normal as suggested by the defendant is not appropriate. In the case cited and described in the literature, the higher marketability CT Page 13987 discounts were reserved for cases which described more than one facet of discount criteria. Here, the defendant would continue to earn as the company was sold, but there would be a cost to the process of sale. Furthermore, the time value of the funds to be conveyed to the plaintiff wife must be assumed in the discount equation. The court finds that a fair marketability discount in this case is fifteen (15%) percent. The value of the common shares is Six Hundred, Forty-two Thousand, Five Hundred ($642,500.00) Dollars.
DRANGINIS, J.